## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RAYMOND HAROLD KIMBLE, III**                    **CIVIL ACTION**

**VERSUS**                                         **NO. 19-13078**

**JOSEPH P. LOPINTO, III, ET AL.**                 **SECTION: "A"(1)**

## REPORT AND RECOMMENDATION

Plaintiff, Raymond Harold Kimble, III, a state inmate, filed this civil action pursuant to 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983. Naming numerous defendants, plaintiff asserted various claims arising from his confinement at the Jefferson Parish Correctional Center.

The Court held a Spears hearing in this case on November 15, 2019. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

The Court then obtained copies of plaintiff's jail medical records, administrative grievance records, and disciplinary records. Those records have been filed into this federal record,[1] and copies were provided to plaintiff for his use in this proceeding.

## I.  Screening Standards

Plaintiff filed this federal civil action *in forma pauperis*.[2]  Concerning such actions, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)      is frivolous or malicious;
> (ii)     fails to state a claim on which relief may be granted; or
> (iii)    seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In addition, because plaintiff is incarcerated, he is also subject to the screening provisions of 28 U.S.C. § 1915A.   That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).[3]  Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)      is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

---

[1] Rec. Doc. 12.
[2] Rec. Docs. 4 and 6.
[3] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

Broadly construing the complaint,[4] as amended,[5] fully considering the Spears hearing testimony, and applying the foregoing standards, the undersigned United States Magistrate Judge hereby makes the following recommendations concerning plaintiff's claims.

## II.  Plaintiff's Claims

### A.  Hair Length

Plaintiff's first claim was that his rights were being violated as result of the fact that male inmates are subject to restrictions on hair length inapplicable to female inmates. With respect to

---

[4] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).
[5] Rec. Docs. 14 and 19.

this claim, he originally sued the Jefferson Parish Correctional Center,[6] Sheriff Joseph P. Lopinto, III, Deputy Chief Sue Ellen Monfra, Legal Advisor John Fitzpatrick, and Assistant Deputy Administrator B. Bordelon.[7]  Plaintiff later amended his complaint to also add Major Edward Olson as a defendant with respect to this claim.[8]

When plaintiff submitted an administrative grievance concerning this claim, defendant Bordelon responded:

> Jefferson Parish Correctional Center Rules and regulations for inmates are written for the safety and security of the facility.  The rules and regulations are based on Louisiana Law, case law and best practices.  Haircuts are required for hygiene and security.  While I can appreciate your displeasure and arguments against having to abide by this policy, the courts have already decided on arguments similar to yours and have sided with the facilities that have hair cut policies.  It is your decision whether to follow the policy or not, however there are consequences for not following policies, which in this case is the loss of your privileges.[9]

Plaintiff appealed that decision, and defendant Monfra similarly denied relief but noted:  "JPCC is in the process of re-evaluating its current policy as it relates to haircuts.  Once a determination has been made that changes are warranted, all JPCC inmates and staff will be notified accordingly."[10]

Plaintiff then again appealed, and defendant Fitzpatrick likewise denied relief, stating:  "I concur with Deputy Chief Sue Ellen Monfra."[11]

---

[6] In this and other claims, plaintiff has named the Jefferson Parish Correctional Center as a defendant.  That is improper.  "The Jefferson Parish Correctional Center is merely a building, not a 'person' subject to suit under 42 U.S.C. § 1983."  Mitchell v. Jefferson Parish Correctional Center, Civ. Action No. 13-4963, 2013 WL 6002770, at *3 (E.D. La. Nov. 12, 2013); accord Culbertson v. J.P.S.O., Civ. Action No. 16-15958, 2017 WL 5133209, at *3 (E.D. La. Nov. 6, 2017); Stamps v. Jefferson Parish Correctional Center, Civ. Action No. 12-1767, 2012 WL 3026808, at *2 (E.D. La. July 12, 2012), adopted, 2012 WL 3027945 (E.D. La. July 24, 2012); Castellanos v. Jefferson Parish Correctional Center, Civ. Action No. 07-7796, 2008 WL 3975606, at *5 (E.D. La. Aug. 22, 2008).  Therefore, on that basis, all claims asserted against the Jefferson Parish Correctional Center should be dismissed with prejudice as frivolous as to that defendant.

[7] Rec. Doc. 1-1, pp. 1-3.

[8] Rec. Doc. 14, p. 2.

[9] Rec. Doc. 1-2, p. 4.  Throughout this opinion, the Court quotes from both plaintiff's complaint and his grievance records.  The quotations herein are verbatim with no corrections of grammatical, spelling, or similar errors.

[10] Id. at p. 5.

[11] Id. at p. 6.

This claim should be dismissed as frivolous.  As defendant Bordelon correctly noted in the grievance response, federal courts have long held that it is not unconstitutional for penal facilities to have different policies regarding hair length for males and females.  See, e.g., Hill v. Estelle, 537 F.2d 214, 215-16 (5th Cir. 1976); see also Ali v. Quarterman, 434 F. App'x 322, 325-26 (5th Cir. 2011); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *8 (E.D. La. Aug. 1, 2007).

### B.  Placement in Detox Tank/Disrespectful Comments

Plaintiff's second claim was that his rights were violated when he was placed in a filthy detox tank by Deputy Mendoza for a period of "30 to 45 minutes."[12]  After plaintiff was removed from the detox tank, Mendoza made disrespectful comments to him.  With respect to this claim, plaintiff sued Mendoza, as well as the Jefferson Parish Correctional Center, Sheriff Joseph P. Lopinto, III, Deputy Chief Sue Ellen Monfra, Sergeant Murray, Lieutenant T.C. Rios, Captain R. Halstead, and Major Edward Olson.[13]

When plaintiff submitted an administrative grievance concerning this claim, defendant Rios responded:

> Inmate Kimble has not met the "Burden of Proof" in his Grievance for an "8th Amendment Violation – Cruel and Unusual punishment", because he was not treated indifferently or inhumanely or sentenced to a punishment which has been determined to be inhumane or indifferent.  He was moved to a holding cell to de-escalate a situation that was steadily becoming a disturbance.  A situation caused by his behaviors when interacting with other arrestees and/or officers.
>
> Inmate Kimble is a "Will Return Inmate" and knows he has to wait to be escorted back into the Prison.  He was being disruptive and rude to Officers and other arrestees in order to expedite his stay in Intake Booking.
>
> He was moved to T1 by Correctional Officer Mendoza because of his behavior and because the cell was empty and he could be alone.  There were no Inmate Security Officers available to escort him back to his Housing area at the time of these incidents.

---

[12] Rec. Doc. 1-1, p. 4.

[13] Id. at pp. 3-6.

The issues with the sanitation of the holding areas are an everyday situation, the holding tanks are cleaned several times a day. The fact that there was debris or trash in the cell, does not qualify as inhumane or indifferent. Inmate Kimble was not purposely subjected to an unsanitary area, and protocol was followed when he was placed in the detox cell. Shoes are always removed from any subject, for safety reasons and so that the shoes cannot be used as projectiles.

Inmate Kimble's statements about what Correctional Officer Mendoza said to him cannot be verified, by the officers working on that date. There have been no complaints about this incident from any other subject reported to any of the Intake Booking Supervisors at the time of this response.

Inmate Kimble was treated as if he were an arrestee due to his being housed in Intake Booking at the time and standard policy was followed.

Inmate Kimble's Grievance is unfounded.[14]

Plaintiff appealed that decision, and defendant Halstead similarly denied relief, stating:

After review, it appears you were moved to another area within Intake Booking because of your behavior. While waiting to be transferred back to your cell location you was then escorted to an empty holding tank. While you were being detained in this location, the question was asked about you placing unused sanitary napkins to the inside of the window of this tank. Shortly after, it appears you was then escorted to one of the Detox Holding tanks. You was then asked to remove your shoes because safety reasons. As far as the complaints or statements you allege Correctional Officer Mendoza made to you, this can not be verified by anyone.[15]

Plaintiff then again appealed, and defendant Olson likewise denied relief, stating:

After review of your grievance and the responses that you received I concur that your grievance is unfounded. Officers' actions were in accordance with policy and procedure as they relate to your housing while in Intake Booking, and the need to maintain order and discipline in an environment that has the potential to be instantly toxic and harmful to both the arrested individuals, inmates, officers and staff.[16]

Plaintiff is a pretrial detainee,[17] and it is clear that "[c]onstitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a condition of confinement or as an episodic act or omission." Shepherd v. Dallas County, 591 F.3d 445, 452

---

[14] Rec. Doc. 1-2, p. 9.
[15] Id. at p. 10.
[16] Id. at p. 11.
[17] Rec. Doc. 1, p. 3.

(5th Cir. 2009) (quotation marks omitted).  The two types of claims are conceptually distinct and impose different burdens on a plaintiff.

"A challenge to a condition of confinement is a *challenge to general conditions, practices, rules, or restrictions* of pretrial confinement."  Estate of Henson v. Wichita County, Texas, 795 F.3d 456, 463 (5th Cir. 2015) (emphasis added; quotation marks omitted).  When presented with such a claim,

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.  Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

Bell v. Wolfish, 441 U.S. 520, 538-39 (1979) (citations, quotation marks, and brackets omitted).  Moreover, it must be remembered that, even when a plaintiff is able to "show direct evidence that detention facility officials intended to punish him for crimes for which he had not yet been convicted," that alone does not suffice to warrant relief, because still "there is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."  Hamilton v. Lyons, 74 F.3d 99, 106 (5th Cir. 1996) (quotation marks and brackets omitted).

"An episodic-acts-or-omissions claim, by contrast, *faults specific jail officials for their acts or omissions*."  Estate of Henson, 795 F.3d at 463 (emphasis added; quotation marks omitted).  With respect to this type of claim, the analysis is different:

> The relevant question becomes *whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge*, and intentionality is no longer presumed.  *A jail official violates a pretrial detainee's constitutional*

7

> *right to be secure in his basic human needs only when the official had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference. In other words, the state official must know of and disregard an excessive risk to inmate health or safety.* The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 463-64 (emphasis added; citations, quotation marks, and brackets omitted).

Here, plaintiff's claim is an episodic-acts-or-omissions claim which challenges a specific action of Deputy Mendoza, i.e. the placement of plaintiff in the detox cell. Although the impetus for Deputy Mendoza's action is disputed, plaintiff's claim fails even if Mendoza was motivated by an ill intent. Although plaintiff alleges that the conditions of the detox cell were appallingly filthy, the Court must consider the length of time he was actually in that cell. Cf. Alexander v. Tippah County, Mississippi, 351 F.3d 626, 631 (5th Cir. 2003) ("[T]he length of time spent in the offensive conditions should be taken into account."). By plaintiff's own admission, he was in the cell for only *thirty to forty-five minutes*. There is simply no basis for concluding that Mendoza or any reasonable officer would believe that such a brief exposure to the conditions alleged would expose plaintiff to a substantial risk of serious harm.[18] Therefore, this claim should be dismissed as frivolous.

To the extent that plaintiff is asserting a separate claim based on the disrespectful comments allegedly made by defendant Mendoza, that claim should likewise be dismissed as frivolous. While it is unseemly for jail officials to taunt or otherwise verbally abuse inmates who have little or no ability to respond without subjecting themselves to a disciplinary action (or worse), purely verbal abuse simply does not run afoul of any federal constitutional protection. See, e.g., Orange v. Ellis, 348 F. App'x 69, 72 (5th Cir. 2009) ("[C]laims of verbal harassment do not reveal

---

[18] Further, even if this were construed as condition-of-confinement claim, it would still fail. Because plaintiff's time in the detox cell was so brief, the exposure was a *de minimis* level of imposition with which the Constitution is not concerned.

a constitutional violation. Mere words are not sufficient to support a Section 1983 claim." (citation omitted)); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983."); Moody v. Lee, Civ. Action No. 13-2745, 2014 WL 107944, at *5 (W.D. La. Jan. 9, 2014) ("[V]erbal threats or taunts, without more, do not support a claimed constitutional violation. Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under § 1983. Plaintiff's claim to the contrary … lacks an arguable basis in law and fact and must … be dismissed as frivolous." (citations omitted)). Therefore, even if one assumes that disrespectful comments were in fact made, no constitutional protection was violated.

## C.  Administrative Segregation

Plaintiff's third claim concerned his periodic confinement in administrative segregation. At the Spears hearing, he explained this claim in more detail. The gist of the claim is that the jail has thirteen administrative segregation cells, and the desirability of those cells varies based on their locations on the unit. Specifically, beginning at approximately 8:00 a.m., the administrative segregation cells are each opened one at a time for a one-hour period so that the inmate(s) therein can shower and attend to their personal needs. However, the timing of a cell's one-hour open period changes daily. For example, on one day, cell #1 is opened first, with the remaining cells then being opened and closed each hour in ascending order – a process which results in the final cell not being opened until late at night. The next day, the same routine is followed but in *reverse* order; therefore, the process begins with cell #13 and proceeds in descending order. Accordingly, the end cells (#1, #2, #12, and #13) are less desirable because the schedules of the inmates confined therein are reversed from day to day (causing disruption to their sleep patterns and limiting their access to the television and telephones – which are available only during the daytime hours – to

every other day); however, the release times for inmates in the middle cells *always* fall within prime daytime hours, and, as a result, the inmates housed therein do not experience comparable deprivations.  Plaintiff complains that he is always confined in one of the end cells, purportedly to punish him more severely than the other inmates.  With respect to this claim, he sued the Jefferson Parish Correctional Center, Sheriff Joseph P. Lopinto, III, Deputy Chief Sue Ellen Monfra, Major Edward Olson, Assistant Deputy Administrator B. Bordelon, Legal Advisor John Fitzpatrick, Sergeant C. Silbernagel, and Lieutenant Wilkie.[19]

When plaintiff submitted an administrative grievance concerning this claim, defendant Bordelon responded:  "The JPCC does not deprive any inmates of the ability to sleep.  Inmates are allowed to sleep at any time of the day or night in their assigned living areas with limited exceptions for security procedures."[20]

Plaintiff appealed that decision, and defendant Monfra similarly denied relief, stating:

> Following your request for administrative review, I concur with the assessment provided by Captain Bordelon.
> Furthermore, the amenities you describe would be conducive to that of a hotel, not a prison facility.  There will undoubtedly be constant disruptions in a given housing unit due to a variety of reasons, i.e., roll call, security checks, medical, inmate movement or other security related reasons.
> While you may not be in agreement, the objective is to preserve safety and security of all officers and inmates in the care, custody, and control of the JPCC. While the goal of this facility is in stark contrast to what you feel is an inconvenience and entitlement, JPCC will continue to strive for what is best for all inmates and officers, not the opinion of one.[21]

Plaintiff then again appealed, and defendant Fitzpatrick likewise denied relief, stating:  "I concur with Deputy Chief Sue Ellen Monfra."[22]

With respect to such claims, the United States Fifth Circuit Court of Appeals has explained:

---

[19] Rec. Doc. 1-1, pp. 6-12.
[20] Rec. Doc. 1-2, p. 15.
[21] Id. at p. 16.
[22] Id. at p. 17.

> In considering whether a condition of confinement resulted in the deprivation of liberty without due process of law, the inquiry focuses on whether the condition or restriction was punitive because the State may not punish pretrial detainees. The fact that detention interferes with the detainee's understandable desire to live as comfortably as possible does not equate to punishment. However, an arbitrary or purposeless restriction on a pretrial detainee leads to the inference that the restriction is punitive. The effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inferences that such restrictions are intended as punishment.

Serton v. Sollie, No. 02-61010, 2003 WL 22849840, at *3 (5th Cir. Dec. 2, 2003) (citations, quotation marks, and brackets omitted). Furthermore, unless administrative segregation imposes on the detainee hardships which are "atypical and significant" in relation to the ordinary incidents of prison life, any challenge regarding his placement on administrative segregation necessarily fails. Rhine v. City of Mansfield, 499 F. App'x 334, 335 (5th Cir. 2012); Clark v. Concordia Parish Correctional Facility, Civ. Action No. 1:19cv335, 2019 WL 6250473, at *3 (W.D. La. Sept. 12, 2019), adopted, 2019 WL 6250433 (W.D. La. Nov. 21, 2019); Parker v. Webber, Civ. Action No. 11-82, 2014 WL 1057189, at *8 (M.D. La. Mar. 19, 2014).

As indicated by Chief Monfra in her response to plaintiff's administrative grievance, the types of restrictions on inmates in the administrative segregation cells and the inconveniences they experience as part of the security procedures are typical in a jail. Moreover, while they may not be pleasant, they are not required to be. Cf. Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1985) (noting that the Constitution does not protect inmates against conditions of confinement that "cause mere discomfort or inconvenience" and that "[i]nmates cannot expect the amenities, conveniences and services of a good hotel …." (quotation marks omitted)).

Further, to the extent that plaintiff is contending that his right to equal protection was violated because, as a result of the rotating schedule, the inmates confined in the end cells (such

as himself) experienced greater deprivations than those in the middle cells, that contention is meritless for the following reasons.

The United States Fifth Circuit Court of Appeals has explained:

> The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situated should be treated alike. Its basics are rote: equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made. In assessing an equal protection claim, strict scrutiny is appropriate only where a government classification implicates a suspect class or a fundamental right. In cases that do not implicate suspect classes or fundamental rights, the appropriate standard of review is whether the difference in treatment between classes rationally furthers a legitimate state interest. Under rational basis review, differential treatment must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

Wood v. Collier, 836 F.3d 534, 538-39 (5th Cir. 2016) (footnotes, quotation marks, and brackets omitted).

Plaintiff is not a member of a suspect class and his claim does not implicate fundamental rights; therefore, the disparity in treatment between the inmates in the end cells and the inmates in the middle cells does not violate his right to equal protection so long as it rationally furthers a legitimate state interest. It does. Jail officials cannot release all inmates on administrative segregation at the same time due to security concerns; therefore, the cells are opened only one at a time. Moreover, because each cell is opened for a one-hour period, and because there are thirteen cells, the rotation of the openings requires at least a thirteen-hour time span, not including the additional time periods during which no cells are opened.[23] As a result, it is simply impossible for all cell openings to occur during the prime daytime hours. However, jail officials mitigate that inconvenience by daily reversing the order the cells are opened. While that rotational solution is

---

[23] Plaintiff explained: "The hours are periodically stopped for numerous events i.e.: medpass; clean up; roll call; inmates taken on or off the dorm; maintance; as well as numerous other reasons …." Rec. Doc. 1-1, p. 8.

imperfect, it is not irrational, and it serves the legitimate state interest of preserving jail safety and security. Accordingly, it does not violate the Equal Protection Clause.

### D. Armband/Administrative Segregation

Plaintiff's fourth claim was that, on July 13, 2019, Sergeant C. Silbernagel secured plaintiff's armband so tightly that an injury resulted. When plaintiff complained, the armband was removed by Deputy Watkins. However, plaintiff was subsequently placed in administrative segregation without proper notice, purportedly for refusing to wear the armband. Although it was subsequently determined at an administrative hearing that he should be transferred from administrative segregation to the general population, plaintiff alleged the transfer was not effected in a timely fashion. With respect to this claim, he sued Silbernagel, as well as the Jefferson Parish Correctional Center, Sheriff Joseph P. Lopinto, III, Deputy Chief Sue Ellen Monfra, Major Edward Olson, Assistant Deputy Administrator B. Bordelon, Lieutenant Wilkie, Deputy J. Shaw, Deputy C. Rivers, and Deputy E. Banner.[24]

When plaintiff filed an administrative grievance concerning this incident, Silbernagel determined that the grievance was unfounded, stating:

> In response to your Grievance dated 07-24-2019 you stated that on 07-13-2019 you were placed on Administrative Segregation. You claimed that the Grievance will be based off of you being on Administrative Segregation for not having an armband. You stated that, other Inmates are missing armbands and are not on Administrative Segregation, therefore we are in violation of your 14th Amendment Right.
> I conducted an investigation into this matter. I discovered that you were ordered on 07-13-2019 to receive an armband from Classification personal. You refused while stating that you would remove the armband if we put it on you. You were then brought down to the Classifications office and an armband was placed on your person by myself. Shortly after we received a call from medical stating that you were claiming the armband is to tight and medical is ordering it to be removed. Since you were adamant of not receiving an armband, you can not be properly identified. Therefore, for the safety and security of the facility, as well as

---

[24] Id. at pp. 12-17.

your safety you were placed on Administrative Segregation until you decided to accepted an Armband.[25]

Plaintiff then filed additional grievances concerning the incident, which Deputy Banner likewise determined were unfounded, stating:

> As you state the armband was removed and you were seen by medical and placed on Administrative Segregation by Sgt. Silbernagel on July 13, 2019. You then sent me a request on July 19, 2019 stating that you were on Administrative Segregation due to no arm band and had not been to a hearing. I promptly addressed your request and you were seen by the Administrative Segregation Board on July 29, 2019 where you were removed from Administrative Segregation. You were then referred back to Administrative Segregation by Sgt. Silbernagel on July 30, 2019 due to lack of bed space. You were seen by the Administrative Segregation Board on August 1, 2019 where you requested to remain on Administrative Segregation. Inmate Kimble your too tight armband was observed by me and addressed promptly and any dispute you have with being placed on Administrative Segregation must be addressed through the appeals process not the grievance process. Lastly, Administrative Segregation is not a punishment as you retain all of your privileges.[26]

Plaintiff appealed that decision, and Chief Monfra responded:

> Following your request for an Administrative Review, I concur with the assessment provided by Deputy Banner. This issue has been resolved.
> Your placement on Administrative Segregation initially was a result of your refusal to wear your armband. Once in compliance, you were removed accordingly.
> You were again subsequently placed on Administrative Segregation a second time due to a lack of bed space in a specific housing unit. Therefore, due to this fact, coupled with your specific charges, and the preservation of safety and security, you were housed in segregation.
> You were removed from Administrative Segregation on August 13, 2019 and relocated to a protective custody unit.[27]

Plaintiff again appealed, and Lindsey Valenti denied that appeal, stating: "I agree with the findings of Deputy Chief Sue Ellen Monfra."[28]

---

[25] Rec. Doc. 12.
[26] Id.
[27] Id.
[28] Id.

As to plaintiff's contention that the armband was secured too tightly, that aspect of his allegations should be construed as an excessive force claim. However, the mere fact that the armband was too tight does not, without more, rise to the level of a constitutional violation. Cf. Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001) ("[H]andcuffing too tightly, without more, does not amount to excessive force."); Montes v. Ransom, 219 F. App'x 378, 380 (5th Cir. 2007) (same).

In addition, although a significant injury is not required to state an excessive force claim, the law nevertheless requires that the plaintiff have suffered an injury which was more than *de minimis*. Glenn, 242 F.3d at 314. At the Spears hearing, plaintiff testified that the armband was so tight that abrasions and raw skin resulted. However, injuries of that type are considered *de minimis*. See Montes, 219 F. App'x at 380 (finding "minor red marks and perhaps a small amount of swelling" were "inherently transient," "only *de minimis*," and "not actionable"); Tarver v. City of Edna, 410 F.3d 745, 751-52 (5th Cir. 2005) (finding "acute contusions of the wrist" to be a *de minimis* injury).

For these reasons, the Court should dismiss this excessive-force aspect of plaintiff's claim as frivolous.

Plaintiff's allegations that he was placed in administrative segregation without due process for refusing to wear the armband is likewise meritless. As explained *supra*, unless administrative segregation imposed on the detainee hardships which were "atypical and significant" in relation to the ordinary incidents of prison life, any alleged due process challenge regarding his placement on administrative segregation necessarily fails. Again, plaintiff has not identified any "atypical and significant" hardships he experienced on administrative segregation. Therefore, the Court should likewise dismiss this due-process aspect of his claim as frivolous.

**E.  Grievances**

Plaintiff's fifth claim was that his administrative grievances were improperly processed and denied.  With respect to this claim, he sued the Jefferson Parish Correctional Center, Sheriff Joseph P. Lopinto, III, Deputy Chief Sue Ellen Monfra, Major Edward Olson, Assistant Deputy Administrator B. Bordelon, Lieutenant Aaron Wilkie, and Deputy E. Banner in the original complaint.[29]  He later amended the complaint to also add Lindsey Valenti as a defendant with respect to this claim.[30]

As an initial matter, the Court notes that any suggestion that plaintiff's grievances were given short shrift borders on ludicrous.  The Court has reviewed the grievance responses, many of which are quoted in this opinion, and they were responsive to his complaints, with some grievances determined to be unfounded, while others were determined to be well founded with measures then being taken to resolve his complaints.

In any event, *even if* his grievances had been improperly processed and denied – which, again, they were not – his claim would still be inherently frivolous because an inmate simply has no constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction.  Bonneville v. Basse, 536 F. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 F. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005).

**F.  Medical Care and Privacy**

In his sixth claim, plaintiff alleged that (1) he was denied appropriate medical care when he complained of chest pains and (2) the defendants violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") by failing to keep his medical information private.  With

---

[29] Rec. Doc. 1-1, pp. 17-20.
[30] Rec. Doc. 14, p.3.

respect to this claim, he originally sued the Jefferson Parish Correctional Center, Sheriff Joseph P. Lopinto, III, Deputy Chief Sue Ellen Monfra, Major Edward Olson, Assistant Deputy Administrator B. Bordelon, Sergeant K. Kline, Deputy Hollermann, CorrectHealth, Nurse Skye Noble, Nurse Kim, Nurse Practitioner Juanita Alexander-Saller, and Nurse Practitioner Deanna Quin-Stevenson.[31]  He later amended the complaint to add J. Llovet as a defendant with respect to this claim.[32]

When plaintiff filed an administrative grievance concerning the incident involving chest pains, defendant Noble informed him that his grievance was determined to be founded and, as a result, the "[n]urse has been counseled regarding chest pain complaint."  However, Noble nevertheless noted:  "You were seen several times in interview throughout the night in Lutenients office, no further inquiry regarding chest pain noted.  In review of sick call the next day it is indicated request for mental health regarding 'anxiety and paranoia', no mention of chest pain."[33] Plaintiff then appealed that decision, and J. Llovet stated:  "I have reviewed and agree with S. Noble's response."[34]

Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail.  However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities.  See Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

---

[31] Rec. Doc. 1-1, pp. 20-26.
[32] Rec. Doc. 14, p. 3.
[33] Rec. Doc. 12.
[34] Id.

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

Here, plaintiff alleges that he experienced chest pains. However, "while chest pain can be a serious medical need in some circumstances, it is not invariably so." Gillam v. Gusman, Civ. Action No. 15-1737, 2015 WL 7289849, at *4 (E.D. La. Oct. 26, 2015), adopted, 2015 WL 7302238 (E.D. La. Nov. 18, 2015). See Easter v. Powell, 467 F.3d 459 (5th Cir. 2006) (finding that a prisoner with "a history of serious heart problems" who alleged that he was denied medical care for severe chest pains stated an actionable claim); but see Mata v. Saiz, 427 F.3d 745, 765-66 (10th Cir. 2015) (Baldock, J., dissenting in part) ("An assortment of maladies might be the source of 'chest pain,' including asthma, stomach ulcers, gastroesophageal reflux disease, anxiety or pneumonia. Chest pain may also originate from a host of organs including the heart, lungs, esophagus, muscles, ribs, tendons, or nerves. Simply stated, not all chest pain signals a heart attack, nor does every heart attack cause chest pain." (citations and quotation marks omitted)).

In the instant case, plaintiff testified at the Spears hearing that: he was thirty-three years old; he had no history of cardiac problems, high blood pressure, or strokes; his chest pains on this occasion lasted for approximately four hours before he eventually went to sleep; and he has not experienced similar chest pains since that time. Considering those facts, it would not appear that the type of chest pains plaintiff experienced in this case would qualify as a serious medical need.

Nevertheless, *even if* plaintiff's chest pains constituted a serious medical need, his claim still is not actionable because that need was not met with deliberate indifference. Regarding deliberate indifference, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not

suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Here, even though plaintiff complained of chest pains on September 16, 2019, there is no indication that emergency care was required. Again, he was a thirty-three-year-old man with no history of heart problems, and he was in no way incapacitated from the alleged chest pains. He was therefore told that he must submit a sick call request for medical care, and he declined to follow that instruction until the following morning after the episode had already ended. It is not unconstitutional to require an inmate to submit a sick call request to access nonemergency medical care. See, e.g., Kitchen v. Webre, Civ. Action No. 13-6705, 2014 WL 2566065, at *5 (E.D. La. May 14, 2014); see also Alexander v. Texas Department of Criminal Justice, Civ. Action No. H-16-3520, 2017 WL 5749548, at *3 (S.D. Tex. Nov. 28, 2017); Curtis v. Gonzales, Civ. Action No. SA-09-CV-0911, 2010 WL 3928521, at *3 (W.D. Tex. Oct. 5, 2010) (Nowak, M.J.) (adopted by Garcia, J., on December 10, 2010); Maxwell v. Epps, No. 4:04CV168, 2007 WL 4287712, at *2 (N.D. Miss. Dec. 4, 2007).

That, of course, is not to say that the nurse acted appropriately by failing to take an inmate's complaint of chest pains more seriously. She did not, as evidenced by the fact that she was later

counseled as a result of plaintiff's grievance. Nevertheless, that still does not make his claim actionable under *federal* law. On the contrary, the nurse's response was, at worst, indicative of negligence or medical malpractice. However, the federal constitution simply does not require that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of *state law* for *state courts*, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

For these reasons, the aspect of plaintiff's claim concerning the inaction with respect to his complaints of chest pains should be dismissed as frivolous.

As to plaintiff's claim that his rights under HIPAA were violated, defendant Noble determined that his administrative grievance concerning that complaint was unfounded, stating: "Conversation/consultation with medical staff are conducted on one-on one basis. Privacy is maintained to the best of availability and deputies are required in the area for safety and security as required in the jail setting. All involved are instructed on HIPAA regulations and or discretion."[35] Regardless, this aspect of plaintiff's claim should be dismissed because "there is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction" over such claims. Acara v. Banks, 470 F.3d 569, 572 (5th Cir. 2006). Accordingly, "even taking [plaintiff]'s factual allegations as true, they do not assert an actionable claim for § 1983 relief." Carpenter v. Arredondo, 714 F. App'x 416, 417 (5th Cir. 2018); accord White v. Lincoln Parish

---

[35] Rec. Doc. 12.

Detention Center, Civ. Action No. 18-1185, 2018 WL 5074675, at *2 (W.D. La. Oct. 8, 2018), adopted, 2018 WL 5046685 (W.D. La. Oct. 17, 2018); Barnes v. Brownlow, Civ. Action No. 6:08cv194, 2008 WL 2704868, at *4 (E.D. Tex. July 7, 2008).

### G.  Mail Service

Plaintiff's seventh claim was that inmate mail at the jail was not processed in timely manner.  With respect to this claim, he originally sued the Jefferson Parish Correctional Center, Sheriff Joseph P. Lopinto, III, Deputy Chief Sue Ellen Monfra, Major Edward Olson, and Assistant Deputy Administrator B. Bordelon.[36]  He later amended the complaint to add Lieutenant T. Berrian and Lindsey Valenti as defendants with respect to this claim.[37]  He then subsequently again amended the complaint to add Deputy Gordon and Lieutenant Sean Henriques as additional defendants.[38]

When plaintiff submitted an administrative grievance concerning the mail service, Lieutenant Aaron Wilkie responded:

> Mr. Kimble, I am in receipt of your grievance dated November 6, 2018.  When an inmate such as yourself leaves the confines of the JPCC for court or other purposes in a neighboring parish and is designated as "will return" status, the mail for an inmate with this status is held at JPCC.  This mail is held until the inmate returns to JPCC, after which point this held mail is delivered to the inmate.  However, the exception to this is legal mail, which in many cases can be time sensitive.  The legal mail is returned to the sender, documenting that the inmate is not currently housed at the JPCC, but is expected to return.  This allows the sender of the legal mail to know that the legal mail needs to be resent to the inmate.  If this mail is held at the JPCC while the inmate is not house at the facility, there is the possibility that whatever is time sensitive can expire before the inmate receives it, as there is no guarantee as to when the inmate will be returned to the facility to collect this mail.  Therefore, your grievance is unfounded.[39]

---

[36] Rec. Doc. 1-1, pp. 26-27.
[37] Rec. Doc. 14, pp. 4-5.
[38] Rec. Doc. 19, p. 1.  Gordon surname is given both as Gordon and Gorden.
[39] Rec. Doc. 12.

Plaintiff then submitted another complaint concerning the mail service in July of 2019.

Lieutenant Timothy Berrian investigated that complaint, and he submitted the following report to

Captain Priscilla Walls:

> Inmate Raymond Kimble wrote a grievance on July 5 2019 stating that no officer picked up his time sensitive mail that needed to be sent out that day.  In the grievance, Inmate R. Kimble stated that he talked to a Sergeant but did not state which Sergeant he spoke with concerning his situation.  I have researched his claim into this matter and Sergeant Jody-Lee Banks was supervisor for this area.  Sgt. J. Banks advised that he did not speak with Inmate R. Kimble about his mail.
>
> On July 5, 2019, I was the Watch Commander for Inmate Security Evening Watch.  I am responsible for creating a duty roster and assigned Correctional Officers to cover the necessary position for the Correctional Center.
>
> While creating the duty roster, I had 8 officer remove themselves for the overtime list creating a shortage for spots that needed an officer present.  Along with the 8 officers, the regular officer who conduct mail call, Correctional Officer Lisa Mercadel, requested leave for that day along with two other officers on approved leave.  The duty roster became even shorter when two officer called in sick and two more officer called requesting leave.  This is a total of 15 officer that did not report and made the watch short.
>
> With the assistance of the Day Watch Necessary Overtime List I was able to fill all necessary spots using the whole Day Watch Necessary Overtime list.  I was able to fill all necessary overtime spot with the following exceptions:  I was not able to place a second officer on housing unit 3A, I was not able to place a second officer in the Medical Infirmary.  I did not assign any officer to pick up mail for two reason:  The first reason was due to fact that we worked short and did not have the personnel to assigned to mail.  The second reason was that we do not have any personnel trained on how to sort, arrange or pass-out mail.
>
> For future reference, we are in the process of picking and training officer to handle this responsibility.  From this point forward I will make sure that I have an officer assigned to handle all mail responsibility from pick-up and drop-off and process mail for delivery.  From the point of this grievance July 5, 2019 to September 24, 2019, we have trained two additional personnel to handle this responsibility.  Necessary action was taken to ensure that mail will be delivered and picked up during the work week.[40]

Sergeant James Glass also investigated the matter.  He reported that although plaintiff's

grievance concerned "an isolated not a recurring issue," it nevertheless highlighted issues that

should be – and subsequently were – addressed.  Glass also reported:

---

[40] Id.

After I conducted my investigation of this grievance, I interviewed Inmate Raymond Kimble III concerning his initial complaint. Inmate Kimble explained that he did not have time sensitive mail but speaking for all inmates in this facility as a whole. Inmate Kimble understand the pausiblibity that one person may have been trained to conduct mail but was unavailable on the above listed date. Inmate Kimble greatly appricate our efforts to rectify this issued and the concern of Lieutenant Berrian. Inmate Kimble suggested have several officers should be train to conduct mail. I advised him in light of this situation we have train several officers to conduct mail to prevent this from occurring again. Inmate Kimble was satisfied with this result and satisfied with the resolution of this grievance.[41]

Based on the foregoing investigations, plaintiff's grievances were determined to be founded in part and unfounded in part.

A jail's handling of inmate mail potentially implicates two constitutional rights: the right of access to the courts and the right to freedom of speech. Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993). That said, "[t]he right of access to the courts is implicated only when the mail is legal in nature, while the right to free speech is relevant to claims involving both legal and non-legal mail." Monterroso Navas v. JPCC/Correct Health, Civ. Action No. 18-6846, 2019 WL 2397221, at *11 (E.D. La. Mar. 29, 2019), adopted, 2019 WL 2395541 (E.D. La. June 6, 2019).

Regarding the right of access to the courts, the United States Fifth Circuit Court of Appeals has explained:

It is clearly established that prisoners have a constitutionally protected right of access to the courts. The Supreme Court has stated that this right of access is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. The Supreme Court has also viewed the right of access to the courts as one aspect of the First Amendment right to petition the government for grievances. While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court.

---

[41] Id.

Brewer v. Wilkinson, 3 F.3d 816, 820-21 (5th Cir. 1993) (citations and footnotes omitted).
Further:

> To state a claim that interference with mail denied him access to court, a prisoner must show an *actual injury* by establishing that he was prevented from raising a nonfrivolous claim concerning his conviction or the conditions of his confinement.

Every v. Jindal, 413 F. App'x 725, 727 (5th Cir. 2011) (emphasis added; citations omitted). See also Walker, 4 F.3d at 413 ("In order for [an inmate]'s claim to rise to the level of a constitutional violation of his right to access to the courts, *he must allege that his position as a litigant was prejudiced by the mail tampering*." (emphasis added)).

As to plaintiff's allegation that delivery of legal mail was delayed, he conceded at the Spears hearing that the delays had not actually harmed any of his litigation efforts. However, in his most recent amendment to the complaint, he stated that he was in fact prejudiced by the delayed delivery of legal mail sent to him by the Louisiana Supreme Court. Specifically, he alleged that mail to him from the Louisiana Supreme Court, which was post-marked March 16, 2020, was not delivered to him until April 13, 2020. He opined:

> The Louisiana Supreme Court legal mail was <u>time</u> <u>sensitive</u> 30 days from the date the court ruled (March 16, 2020), in order for me to file and appeal to a higher court. Making it impossible for me to meet the 30 day deadline, I only had 2 days since the receipt of the April 13, 2020 date. **– Now this will interfer with my criminal case –**[42]

Although plaintiff did not state what the ruling concerned, the Louisiana Supreme Court's website indicates that it denied a writ application in his criminal case on March 16, 2020.

However, even assuming that the delay in plaintiff's receipt of that ruling was attributable to jail officials rather than to the Louisiana Supreme Court or the United States Postal Service, this

---

[42] Rec. Doc. 19, p. 2.

Court rejects the allegation that prejudice resulted from plaintiff's delayed receipt of that decision for the following reasons.

First, an individual cannot "appeal" a decision of the Louisiana Supreme Court to a "higher court." Moreover, even if petitioner is perhaps referring to his right to file a petition for a writ of certiorari with the United States Supreme Court, such applications are *not* subject to a *thirty*-day deadline. Rather, the United States Supreme Court's Rules provide:

> Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is fled with the Clerk of this Court within 90 days after entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review.

United States Supreme Court Rule 13(1). In addition, even that deadline can be extended for up to sixty additional days for good cause. United States Supreme Court Rule 13(5). Therefore, if plaintiff received the Louisiana Supreme Court's decision on April 13, 2020, as he alleged, he still had more than *sixty days* remaining in which to file such a petition with the United States Supreme Court even without obtaining an extension.

Second, if plaintiff is perhaps referring to the filing of a motion for rehearing with the Louisiana Supreme Court itself, he again suffered no prejudice – because no such application would have been considered. The Louisiana Supreme Court's own rules expressly state that "[a]n application for rehearing *will not be considered when the court has merely* granted or *denied an application for a writ of certiorari or a remedial or other supervisory writ* …." Louisiana Supreme Court Rule IX, Section 6 (emphasis added).

Because plaintiff was not prejudiced by the delayed receipt of Louisiana Supreme Court decision, and because he has alleged no prejudice resulting from the delays in receiving any other legal mail, his access-to-courts claim fails.

Plaintiff's free-speech claim likewise has no merit.  Unlike an access-to-court claim, a free-speech claim does not have a "legal prejudice requirement."  <u>Every</u>, 413 F. App'x at 727.  Nevertheless, it is clear that short term, sporadic delays in the delivery of general, content-neutral, non-legal mail do not even rise to a constitutional violation.  <u>See, e.g.</u>, <u>Rowe v. Shake</u>, 196 F.3d 778, 782-83 (7th Cir. 1999).

### H.  Legal Services

Plaintiff's eighth claim was that he was denied adequate legal services and support at the jail while representing himself on his state criminal charges.  With respect to this claim, he sued the Jefferson Parish Correctional Center, Sheriff Joseph P. Lopinto, III, Deputy Chief Sue Ellen Monfra, Major Edward Olson, and Assistant Deputy Administrator B. Bordelon.[43]

When plaintiff submitted an administrative grievance concerning this claim, defendant Bordelon responded:

> The JPCC Court Transportation Section has documentation showing that you are utilizing the Laptop designated for you to review your discovery evidence. The JPCC only has one area that is utilized to show computer discovery evidence to inmates.  The court currently has ordered multiple inmates to be allowed to utilize the area for this purpose.  The Commander of the Court Transportation section, Lieutenant Lee, has notified me that they schedule you to view the computer evidence as much as they are able to do so.  Due to a combination of scheduling conflicts as well as security concerns, you are already being scheduled to utilize the area and computer as much as the JPCC is able to.  If you are requiring anything additional, you will need to direct the request to the court over your case.[44]

Plaintiff appealed that decision, and defendant Olsen similarly denied relief, stating:

---

[43] Rec. Doc. 1-1, pp. 28-30.
[44] Rec. Doc. 1-2, p. 43.

I have reviewed your grievance and the response that you received. I concur with Captain Bordelon's assessment that your grievance is unfounded. There is limited space to accommodate electronic discovery. You are not the only inmate that has to review electronic discovery. Additionally, this area is utilized for other activities and there is a schedule that is followed. This has already been discussed with the judge presiding over your case and he is aware of the scheduling restraints.[45]

Plaintiff then again appealed, and defendant Monfra likewise denied relief, stating:

Following your request for administrative review, I concur with the assessment provided by Major Olsen.

You are scheduled to attend the law library several times a month for a period of two hours, which you requested through the court.

Through a log assessment, it is apparent this process has aided in the preparation of your legal case.

While I take note of your position, this facility bears the responsibility to accommodate the legal needs of all inmates.

Therefore, while these efforts pose a challenge, I am of the opinion JPCC Administrators are providing the best suited schedule to reasonably allow you accessibility to the law library, while maintaining that same level of accommodations to an inmate population securing their own legal defense.[46]

Plaintiff's allegations with respect to this claim again implicate the constitutional right of access to the courts. As noted above, "[i]t is clearly established that prisoners have a constitutionally protected right of access to the courts." Brewer v. Wilkinson, 3 F.3d 816, 820-21 (5th Cir. 1993). However, that right does not encompass "an abstract, freestanding right to a law library or legal assistance" in prison. See Lewis v. Casey, 518 U.S. 343, 351 (1996). On the contrary, the right can be met in *other* ways, *including by the provision of counsel.* See Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir. 1996); see also Dickinson v. TX, Fort Bend County, 325 F. App'x 389, 390 (5th Cir. 2009) ("Because Dickinson had court-appointed counsel to represent him, he did not have a constitutional right of access to a law library to prepare his criminal defense."); Ashcraft v. Cameron County, No. 97-41219, 1998 WL 611201, at *3 (5th Cir. Aug.

---

[45] Id. at p. 44.
[46] Id. at p. 45.

27

17, 1998) ("A criminal defendant cannot complain that he was denied access to the courts while represented by counsel."); <u>Ford v. Foti</u>, No. 94-30614, 1995 WL 241811, at *3 (5th Cir. Apr. 14, 1995) ("A criminal defendant who is represented by counsel has meaningful access to the courts vis-a-vis the criminal action pending against him."); <u>Childs v. Scott</u>, No. 94-60723, 1995 WL 153057 (5th Cir. Mar. 22, 1995) ("If a criminal defendant is represented by counsel, he has constitutionally sufficient access to the courts."); <u>Webb v. Havins</u>, No. 93-1452, 1994 WL 286151, at *3 (5th Cir. June 13, 1994); <u>Crockett v. Carpenter</u>, No. 93-1480, 1994 WL 144645, at *3 (5th Cir. Apr. 5, 1994).

At the <u>Spears</u> hearing, plaintiff testified that an attorney was in fact appointed to represent him in his state criminal proceedings. That forecloses this claim. The appointment of counsel satisfied the state's obligation to provide plaintiff with access to the courts. The fact that he subsequently chose to fire his appointed counsel and proceed *pro se* is of no moment. The access-to-courts claim was not revived by that unilateral action on his part. <u>Degrate</u>, 84 F.3d at 769 ("[H]aving rejected the assistance of court appointed counsel, [an inmate has] no constitutional right to access a law library in preparing the pro se defense of his criminal trial."); <u>see also</u> <u>Sosa v. Strain</u>, Civil Action No. 06-9040, 2007 WL 1521441, at *6 n.8 (E.D. La. May 22, 2007); <u>Buckenburger v. Strain</u>, Civil Action No. 06-5670, 2006 WL 4503353, at *3 (E.D. La. Oct. 20, 2006).

## I. Perjury

Plaintiff's ninth claim was that Detective David DeRoche lied under oath at plaintiff's preliminary examination. With respect to this claim, he sued DeRoche and Sheriff Joseph P. Lopinto, III.[47]

---

[47] Rec. Doc. 1-1, pp. 30-31.

DeRoche enjoys absolute immunity with respect to this claim.  Under Louisiana law, a preliminary examination is an adversarial pretrial criminal proceeding.  State v. Jenkins, 338 So. 2d 276, 279 (La. 1976).  The United States Fifth Circuit Court of Appeals has explained:

> [T]he Supreme Court has repeatedly made clear, in the § 1983 context, *a trial witness has absolute immunity with respect to any claim based on the witness' testimony*.  This is because a witness' fear of retaliatory litigation may deprive the tribunal of critical evidence and the possibility of civil liability is not needed to deter false testimony at trial because other sanctions provide a sufficient deterrent. And we have explained that the reason for granting absolute immunity to a witness against claims arising from testimony applies with equal force in both trial and *adversarial pretrial settings*.

Moffett v. Bryant, 751 F.3d 323, 325-26 (5th Cir. 2014) (emphasis added; footnotes, quotation marks, brackets, and ellipsis omitted).  The Fifth Circuit has further explained:

> The protection accorded to the dishonest witness is simply a necessary consequence of a rule deemed essential to maintaining the integrity of the judicial process. Moreover, granting immunity from § 1983 liability does not provide witnesses with a license to testify falsely or leave the public powerless to deter misconduct or to punish that which occurs.  This Court has never suggested that the policy considerations which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law.  The witness who lies on the stand may be prosecuted for perjury.  This threat of criminal sanctions provides a sufficient deterrent against abuse of the witness privilege.  If the risk of having to defend a civil damage suit is added to the deterrent against such conduct already provided by criminal laws against perjury and subornation of perjury, the risk of self-censorship becomes too great.

Charles v. Wade, 665 F.2d 661, 667 (5th Cir. 1982) (citations, quotation marks, and brackets omitted).  Therefore, the claim against DeRoche should be denied.  Because the claim against DeRoche fails, the derivative claim against Lopinto necessarily also fails.  Cf. Mowbray v. Cameron County, Texas, 274 F.3d 269, 277-78 (5th Cir. 2001) ("[A]bsolute witness immunity bars § 1983 suits for conspiracy to commit perjury.").

## **<u>RECOMMENDATION</u>**

It is therefore **RECOMMENDED** plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim upon which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n,</u> 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this seventeenth day of June, 2020.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**